HICKS, Executor, &c. v. COCHRAN and others, Executors, &c.

Parties were recognized by the court as man and wife, although no marriage ceremony had taken place, from their having cohabited together for years and being considered as such by their acquaintances, and also from having both executed a deed in which the woman was described as wife.(a)

Although the effect of a deed of real estate to husband and wife is to let the entirety go to the survivor, yet it may, by express words, create a tenancy in common and that too in unequal estates, as, one to take a moiety for life and the other in fee.

Husband and wife make a deed to a party who reconveys it, "the one equal half part to each;" but it was coupled with conditions: for instance, that while the wife was to take the rents for life, she had not "power to sell or incumber her half, and could dispose of it only by will; and the husband was, also, only to do so as to his moiety, save by her consent. The wife died first, having made a will; but the husband assumed the ownership of the whole and devised it to his second wife and to his son by her: *Held*, that the restrictions grafted on the fee were not void, that the husband had bound himself thereby and so relinquished his right to the wife's moiety; and also, that the will made by her would be looked upon in the nature of a valid appointment which her heir could not set aside and in relation to which the second wife and the son had, certainly, no right or claim.

IN the year one thousand eight hundred and one, Henry Pritchard and Mariana, his reputed wife, emigrated from England and settled in the city of New York. It appeared that they had lived together in England as man and wife.

In the month of April, one thousand eight hundred and fifteen, an act was passed by the legislature of the State of New York, authorizing these parties respectively to take real estate to the amount of twenty thousand dollars in the state, either by descent or purchase; and to hold or dispose of the same in the same manner as natural born citizens.

In the month of May, one thousand eight hundred and fifteen, Mariana bought of Kinlock Stewart and Agnes his wife, the dwelling house and lot known as No. 157 Greenwich-street, New York, for four thousand nine hundred and

*July* 21, 1842.

*Husband and wife. Deed.*

(a) And see *Donelly* v. *Donelly*, 8 B. Mon. 113.

fifty dollars; but, in August of the next year, she and the said Henry Pritchard, for a nominal consideration, reconveyed the premises to Kinlock Stewart by a deed in which she is described as "the wife" of the said Henry Pritchard.

On the fourteenth day of September, in the year one thousand eight hundred and sixteen, the said Kinlock Stewart and wife, by deed of that date, in consideration of ten dollars and of love and affection, conveyed to the said Henry Pritchard and Mariana Pritchard "and to their heirs and assigns (in their actual possession then being) the one equal undivided half part of each of all that certain" messuage 157 Greenwich-street aforesaid. *Habendum*, to them in fee; on the following conditions: 1st. That the said Mariana Pritchard should have the government and should receive all the rents, issues and profits of the said premises during her natural life. 2d. That she should not, during any time of the term, sell or convey her half of the said premises or mortgage or in any way incumber them without the consent of the said Henry being first had and obtained. 3d. That she should have sole right and power to will her half to whomsoever she might think proper. 4th. That Henry should not sell or incumber his half without her consent. 5th. That he might will away his half to whom he pleased. 6th. If one of them died intestate, the whole was to go to the survivor, his or her heirs and assigns. 7th. Either dying leaving a will, the executor or executors should not act thereupon, but the rents, issues and profits of the premises and the estate thereby granted should enure to the benefit, advantage and disposal of the survivor, his or her representatives; and in the event of the death of such survivor and only then, their and each of their executors should dispose of the said estate according to their and each of their intentions expressed in their several wills.

In the year one thousand eight hundred and twenty, the said Henry and Mariana separated; and Mariana alone continued thenceforth to occupy the house until her death.

Sometime in the year one thousand eight hundred and twenty-seven, Mariana died without issue, having previously made an instrument in the nature of a will, by which

after giving certain legacies, she devised all the residue and remainder of her estate and effects real and personal unto Henrietta Isabella Stewart and Isabella Catharine Stewart, daughters of William Stewart, then residing in or near London, in the kingdom of Great Britain. At the time of her death she had no relations other than aliens—nor was there any real estate in which she could have any right or seeming claim than the said house in Greenwich-street.

Immediately after her death, Henry Pritchard took possession of the house and occupied it until the year one thousand eight hundred and thirty-four, when he died, leaving a widow and a child. He also had made a will, wherein he devised the premises to executors in trust for his son.

The executors of Henry Pritchard denied the right of Mariana to affect the premises by any will ; while her executor filed a bill to establish such will and to have its provisions executed. The persons made defendants were the widow and son of Henry and also Henrietta Isabella Stewart and Isabella Catharine Stewart.

The case came before the court on bill and answer.

Mr. *Cutting*, for the complainant.

Mr. *J. O. Sergeant* and Mr. *Lockwood*, for the defendants.

The Vice-Chancellor :—Henry Pritchard and Mariana Pritchard, whose transactions have given rise to the bill in this cause and who are represented, the latter by the complainant as her executor and the former by the defendants as his executors, are, I think, to be regarded in the light of husband and wife for all the purposes of this suit. Although a marriage ceremony may never have taken place, yet, having lived and cohabited together as man and wife both in England and in this country for twenty years, having publicly represented themselves to be such—been so considered and acknowledged by their acquaintances—she bearing his name, being called his wife in a deed which they both executed and in all their dealings with each other

1842.

HICKS
*v.*
COCHRAN.

*March* 21, 1843.

in respect to the property in question recognizing the rela-
tion of husband and wife as subsisting between them as
appears to be conceded by both the bill and the answer in
this cause, they are to be regarded as having that relation
to each other in respect to the property as much so as if an
actual marriage ceremony was proved: *Jenkins* v. *Bisbee*,
1 Edwards's Ch. Rep. 377; *Fenton* v. *Reed*, 4 J. R. 52;
*Jackson* v. *Clair*, 18 Ib. 346.

I shall, therefore, proceed to consider this case upon the
assumption of the parties being husband and wife when
the transactions took place.   The principal question is as to
the effect of the deed of reconveyance from Kinlock Stew-
art and wife to the Pritchards of the fourteenth day of
April, one thousand eight hundred and sixteen.   The pro-
perty had been previously purchased by and in the name
of Mariana Pritchard; and the deed was made out to her
alone.   In order to carry into effect a new arrangement con-
cerning the property, the legal title was put back again in
Stewart; and the deed in question was then executed by him
and his wife to both.

At law, a conveyance or devise of lands to husband and
wife jointly creates an estate in them of the entirety as one
person—being but one person in law, they do not take in
moieties as joint tenants nor as tenants in common—one
cannot sell the whole or any part without the concurrence
of the other and, upon the death of one, the whole vests in
the survivor, in which respect it partakes of the nature of a
joint tenancy:   2 Kent's Com. 132; 4 Ib. 362.   It is laid
down, however, as a well understood rule of law, that a
husband and wife may, by express words, be made tenants
in common by a gift or conveyance to them during cover-
ture:   2 Preston on Abst. tit. 41; and from another work
of high authority, it is very manifest that a gift or grant to a
husband and wife is to have just such effect in respect to
the estate which they take as was intended to be created.
Thus, the wife may take only an estate for life and the
husband an estate tail or in fee—and *vice versa:* Shep-
ard's Touch. 112, Preston's edit.   I have no hesitation about
adopting and following this rule, especially in a court of
equity where the intention of the parties in any deed or

instrument, not contrary to law, should be allowed to prevail.

What, then, does the deed in question purport to 'convey or settle upon this husband and wife?

In terms, it purports to convey the property in distinct moieties, the one equal half part to each. *Habendum* " the said equal undivided half part" unto the said parties of the second part their heirs and assigns for ever. These are very explicit words and as strongly expressive of a tenancy in common, in equal moieties, as if the words, *to hold as tenants in common*, had been used. Then follows the proviso or condition that the wife shall have the government and receive all the rents of the premises during life, but shall not sell or in any manner iucumber her half of the premises without consent of her husband, with full right and power nevertheless to will her half to whomsoever she may think proper; so, the husband is not to sell or incumber his half during his life without her consent, but may will the same to whom he pleases. In the event of either dying intestate, the whole to belong to the survivor. And lastly, in the event of the death of either leaving a will, the executors are not to act, but the rents are to go to the survivor; and it is only at the death of the survivor that the executors are to dispose of the property according to the intentions of the parties as it may be expressed in their several wills. The wife died first, leaving a will and having appointed the complainant in this cause executor thereof, with power to sell her half of the property, the proceeds of which are bequeathed to relatives. The husband afterwards died, leaving a will and appointing the defendants the executors thereof, with power to sell the whole premises, &c. Now, it is insisted, on the authority of *Goodhill* v. *Brigham*, 1 Bos. & P. 192, that all this proviso and condition in the deed and the power to dispose of the property by will is void, as being inconsistent with the fee which was given to her by the same deed; that no modification or power grafted on the fee can be of any avail, for it is immediately merged in the fee. But, in Roper (Husband and Wife, 2 vol. 105,) it is shown that the weight of authority is the other way; and that the power and the fee may

1843.

HICKS
v.
COCHRAN.

well subsist together without being merged. He, therefore says, if an estate be given to a married woman in fee, with a power annexed to or preceding such limitation to dispose of the fee as a *feme sole*, such power will be valid ; and, upon the execution of it, the fee which, till appointment, vested in her, would be divested. In Thomas and Fraser's notes to *Sir Edward Cleve's Case*, 6 Coke, 17, a., there is a complete summary of the law in these words: "It has been doubted whether a power and a fee may subsist distinctly in the same person without the power merging in the fee. Sir Edward Cleve's case has always been cited as an authority to show that they may. It is now settled accordingly that the fee vests until the execution of the power and when the power is executed it is the limitation of the use under and by effect of the instrument by which the power was reserved"—referring to *Maundrell* v. *Maundrell*, 10 Ves. 253 ; *Ray* v. *Pung*, 5 Mad. R. 310, and 5 Barn. & Ald. 561, as settling this doctrine.

Again—so far as this is a question between the representatives of the wife and the representatives of the husband under their several and respective wills, I think it is very clear that the latter can have no rightful claim on the wife's separate and distinct moiety of the estate as I have shown it to have been. By the arrangement which was entered into and agreed upon between them and which it is very certain was intended to be carried into effect and consummated by putting the title back in Kinlock Stewart and then accepting from him a fresh conveyance in the manner and upon the terms specified in the last deed, the husband became bound to abide by the terms and conditions of it. He must be deemed to have relinquished thereby all right to one moiety of the property ; and to have become content to take the other with the power of disposal or appointment by his will. It was competent for him to enter into such an agreement with his wife and there was sufficient inducement and consideration to make it binding and obligatory on him and his heirs, devisees or appointees. But the great difficulty in a legal point of view is, how to consider the wife bound by an agreement which she enters into with her husband *after* the marriage and while under the legal

disability of coverture, by which she can take to herself a power to dispose of her real estate by will or appointment, executed during coverture, so as to break the descent and deprive her heir of it. When the legal title and estate is vested in a trustee, subject to her appointment, no such difficulty can arise ; and so too when the power is reserved or secured to her by agreement *before* marriage. This, however, is a matter with which the husband's representatives can have no concern. He has parted with all his control over and right to the wife's estate. On this subject I refer to Atherley, 336, 339 ; 2 Roper's Husband and Wife, 181.

Then, how does the case stand with regard to the right of the present complainant as executor of the wife, to proceed and have a sale of her moiety of the property as directed by her will ? If he can give a good title to a purchaser or if the court can decree such a title as against the wife's heir, then, all difficulty in this case is at an end. If this was property which belonged to the wife before marriage and concerning which she had made the agreement or arrangement in question with her husband after their marriage, then, both upon principle and authority, the power which she has undertaken to exercise by her will would be invalid and her heir would be entitled. But this is property which came to the wife during the coverture by deed, containing conditions and a power which, as already shown, are not altogether nugatory. I think, for the purposes of this suit, the property may well be considered as coming to the wife *ab initio* by this last deed. With respect to the real estate which accrues to the wife during marriage by deed or will, if no trustees be interposed and the instrument expresses that the lands shall be to her separate use and that she shall have power to dispose of them, although she thereby takes the legal fee, she may nevertheless appoint it, so that such appointment will bind her heir and convert him into a trustee for the appointee. This Mr. Roper lays down as the rule in such cases, notwithstanding *Goodhill* v. *Brigham*, 2 Roper, 183, 184 ; and in this case I fully concur.

It is manifest, however, that a perfect decree for sale and

conveyance of an .effectual title to a purchaser cannot be made without bringing in the heir; and as it appears the wife left no. heirs capable of inheriting, they being aliens, the Attorney General must be made a party before an effectual decree can be pronounced.

Order that the cause stand over for that purpose.