BERNHARD FLADUNG, BARBARA FLADUNG, and others,
*vs.* JOHN ROSE.

*Equity pleading—Bill to set aside a Deed for Fraud—Suffi-
ciency of allegation of indebtedness—Proof of indebtedness—
Construction of a deed to Husband and wife as Joint
tenants.*

A bill was filed to set aside certain deeds as fraudulent in fact. It
alleged that B. F., the grantor, was indebted to the complainant on
a *note* which bore date about two months after the 5th of Febru-
ary, 1874, the date of the first of the series of deeds assailed. But
it further alleged "that the *said conveyances* were fraudulently
made, not *bona fide*, for simulated and pretended considerations,
with intent to hinder, delay and defraud *your orator* and the other
creditors of the said B. F. of their just and lawful claims." HELD:

1st. That the latter allegation was sufficient to let in proof that B. F.
was in fact indebted to the complainant on and before the 5th of
February, 1874.

2nd. That the fact of such indebtedness was sufficiently established
by the note referred to, which showed on its face that it was given
*in renewal* of an antecedent note, in connection with evidence
showing that B. F. was also liable on the antecedent note, and
that the complainant became the purchaser and owner of that
note before the 5th of February, 1874.

Where the intention is manifest, and apt words are employed to
create a tenancy in common or a joint tenancy, husband and wife
in this State are now capable of taking and holding as *tenants in
common* or as *joint tenants*, according to the express terms of the
grant.

B. F. and his wife, "for the purpose of creating a *joint tenancy* in
said B. F. and his wife in all their property," conveyed the same
to L., who immediately re-conveyed it to the said husband and
wife "*as joint tenants*, and not as tenants in common, the survivor
of them and the heirs, personal representatives, and assigns of such
survivor." On a creditor's bill seeking to subject the property of
B. F. to the payment of his debts, it was HELD:

That B. F. and wife became joint tenants of the property so conveyed to them, and the husband's interest therein was liable to be seized in execution, and sold by his creditors during the life of his wife.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellee against the appellants for the purpose of having certain deeds declared fraudulent, as intended to hinder and delay the creditors of Bernhard Fladung. The property sought to be affected by the proceeding, had, prior to the execution of the deeds assailed for fraud, been conveyed to Bernhard Fladung, and Barbara Fladung, his wife, for the purpose, as recited in the deed to them, "of creating a joint tenancy in Bernhard Fladung and Barbara Fladung," and the *habendum* in said deed was "to the said Bernhard Fladung, and Barbara Fladung, his wife, as joint tenants, and not as tenants in common, the survivor of them, and the heirs, personal representatives and assigns of such survivor." The Court below, (DOBBIN, J.,) passed a decree setting aside the deeds assailed for fraud, and directing the undivided interest of Bernhard Fladung as joint tenant in the property conveyed by said deeds, or so much thereof as might be necessary, to be sold for the payment of the complainant's claim, unless the same was paid by a day named in the decree.

The defendants appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, IRVING, and RITCHIE, J.

*Frederick C. Cook,* for the appellants.

The deed from Fladung and wife to Linberger, and the deed back from Linberger to them as "joint tenants and not as tenants in common," created in the grantors a *tenancy by the entireties,* and not a joint tenancy. 2 *Cooley's*

Fladung and Wife, *et al. vs.* Rose.

*Blackstone,* \*182, *n.* (6) and cases cited; *Craft vs. Wilcox,* 4 *Gill,* 505; *Marburg vs. Cole,* 49 *Md.,* 402; *Pollok vs. Kelley,* 6 *Irish Law R., N. S.,* 373; *Green vs. King,* 2 *Wm. Blackstone,* 1211; *Johnson vs. Hart,* 6 *W. & S.,* 319; *Dias & Burn vs. Glover,* 1 *Hoffm. Ch.,* 76; *Barber vs. Harris,* 15 *Wend.,* 617; *Rogers vs. Grider,* 1 *Dana,* (Ky.,) 242; *Stuckey vs. Keefe's Executors,* 2 *Casey,* (26 *Pa.,*) 397; *French vs. Mehan,* 6 *Smith,* (*Pa.,*) 286.

One of the essential incidents of this estate by the entireties, is that the husband, by deed, cannot, without joining the wife, divest her estate, and thus defeat her right of survivorship. *Doe vs. Parratt,* 5 *Term Rep.,* 652; *Wales vs. Coffin,* 13 *Allen,* 213; *Ketchum vs. Walsworth,* 5 *Wisc.,* 95; *Fairchild vs. Chastelleux,* 1 *Barr,* 180–1.

The reason of this being that they hold *per tout et non per my,* so that each is seized in severalty of the whole estate, they being treated "*quasi unica persona.*" The character of the tenure of each may be thus expressed, '*quilbet totum tenet et nihil tenet; scilicit totum in communi et nihil separatum per se.*" *Bracton, lib.* 5, *tr.* 5, *c.* 26; *Jackson vs. Stevens,* 16 *Johns.,* 110; *Jackson vs. Cairns,* 20 *Johns.,* 303.

And as the husband cannot by his voluntary act or deed so far affect the wife's estate as to divest her right of survivorship, it follows that his creditors cannot, by proceedings *in invitum,* do what he cannot do voluntarily. *Beaumont's Case,* 9 *Co. Rep.,* 140; *Rogers vs. Grider,* 1 *Dana,* 242; *Roanes vs. Archer,* 4 *Leigh,* 550.

There are cases, however, that hold that the husband has absolute control of the estate during his life, and can convey and mortgage it during that period. *Barber vs. Harris,* 15 *Wend.,* 615; *French vs. Meehan,* 56 *Pa. St.,* 286. And that his *life interest* may be subjected to execution by his creditor. *Jackson vs. McConnell,* 19 *Wend.,* 175; *French vs. Meehan,* 51 *Pa. St.,* 286; *Brown vs.*

*Gale,* 5 *N. Hamp.,* 416; *Ames vs. Norman,* 4 *Sneed,* (*Tenn.,*) 683; *Washburn vs. Burns,* 34 *N. J. Law,* 19; *Bennett and Wife vs. Child,* 19 *Wisc.,* 362.

This limit to the power of the husband and the husband's creditors, is there clearly confined to the duration of the husband's life; but the theory of the law upon which this limited power must be sustained, is that the husband at common law was *jure mariti* entitled to a life estate as tenant by the curtesy in the wife's freehold estate, and entitled absolutely to her personal estate, which interests were extendible under an execution against the husband alone. This, however, is not now the law of Maryland, which will not allow such interest to be extended during the life of the wife. *Anderson, &c. vs. Tydings, &c.,* 8 *Md.,* 427; *Logan vs. McGill and Wife,* 8 *Md.,* 461; *Schindel vs. Schindel,* 12 *Md.,* 294; *Bridges & Woods vs. McKenna,* 14 *Md.,* 266; *Weems vs. Weems,* 19 *Md.,* 345; *Rice vs. Hoffman,* 35 *Md.,* 344; *Hoffman vs. Rice,* 38 *Md.,* 285.

In the case of *Marburg vs. Cole,* 49 *Md.,* 402, this Court has said, that Art. 45, secs. 1 and 2, of the Code of 1860, do not "*at all affect the nature of the estate conveyed to husband and wife by deed to them jointly.*" But the authorities cited by the Court and commended as decisions, "based upon principle and reason, entirely satisfactory and conclusive," establish the proposition that though the nature of the estate conveyed is not affected by the married women's acts, its mode of enjoyment is materially affected. *Diver vs. Diver,* 56 *Pa. St.,* 106; *McCurdy, &c. vs. Canning,* 64 *Pa. St.,* 39; *Davis vs. Clark,* 26 *Ind.,* 424; *Chandler vs. Cheney,* 37 *Ind.,* 391.

From these propositions it must follow that in the State of Maryland, neither the husband nor his creditors can, during the life-time of the wife, in any manner affect the interest of the husband in lands deeded to husband and wife jointly. *Thomas vs. DeBaum,* 1 *McCarter Ch.,* 37;

Fladung and Wife, *et al. vs.* Rose.

*McDermott vs. French,* 2 *McCarter Ch.,* 78; *Jackson vs. McConnell,* 19 *Wend.,* 175; *Chandler vs. Cheney,* 37 *Ind.,* 391.

Now, if the appellants' contention be true, the complainant is necessarily seeking by his bill for relief that the Court cannot afford. Because Courts of equity in setting aside deeds as fraudulent against creditors, under *Stat.* 13 *Eliz., ch.* 5, are obliged to construe those deeds as to such creditors "*to be clearly and utterly void.*" The deeds set aside, are indeed, for many purposes valid—*ex gr.* as between the parties thereto, and all persons claiming under them. But as to the creditors of the grantor, the theory of the law, which is enforced in practice by the Courts, being that title never passed out of the fraudulent grantor, and it is therefore only his interest that can be sold to satisfy such creditors. *Stewart vs. Iglehart,* 7 *G. & J.,* 132; *Farrow vs. Teackle,* 4 *H. & J.,* 271; *Pratt vs. Wheeler,* 6 *Gray,* 522, 3; *Adams vs. Foster,* 20 *Johns.,* 451.

And this theory of the law has been recognized in this case by the decree passed by the Court below, whereby the interest of Bernhard Fladung only is ordered to be sold, and which the Court erroneously characterizes as "his undivided interest as joint tenant in said property."

[Argument on other points omitted. REP.]

*Charles Marshall,* for the appellee.

The point of the appellants, is founded on an erroneous interpretation of the decision of this Court in *Marburg, et al. vs. Cole,* 49 *Md.,* 402. That case only decides that a deed to a husband and wife *jointly,* not as *joint tenants,* is not affected by the Act of 1822, ch. 162, Art. 49, sec. 12, of the Code. It certainly does not decide, that with the enlarged powers of a married woman to take and hold property in Maryland, she may not be made a joint tenant with her husband by a deed containing apt words to pass

such an estate. This, was effected by the two deeds from Fladung and wife to Linberger, and from the latter to the former.

The estate conveyed by deeds consisted of one parcel belonging to Mrs. Fladung, and all the rest to her husband.

It was the object of the fraudulent transactions impeached by this bill, to secure the husband's interest from his creditors. He had the interest of a joint tenant in all the property, and it was liable for his debts.

MILLER, J., delivered the opinion of the Court.

On the 5th of February, 1874, Bernhard Fladung, for the alleged consideration of $3500, conveyed all his property to his wife Barbara Fladung. In October, 1875, he and his wife conveyed the property to one Hauser for the consideration of $4000, and a few days thereafter Hauser conveyed the same to one Rost for the alleged consideration of $4500. In May, 1876, Rost, by three deeds, the aggregate considerations of which amounted to $8000, conveyed the same property to Mrs. Fladung, and on the 16th of August following, she and her husband conveyed the same to the latter in trust for the wife for life, and upon her death in trust for their three children. It thus appears that the property was transferred first from the husband to the wife, and eventually back to the husband in trust for his wife and children. That these several conveyances were each and all of them contrived and executed for the purpose of hindering, delaying and defrauding the husband's creditors admits of no reasonable doubt. He was not only largely indebted at the time, but the several considerations expressed in the deeds are all admitted or proved to have been fictitious and false, and during the whole period he remained as he was before, in possession of all the property, receiving the rents and income therefrom to his own use.

Fladung and Wife, *et al. vs.* Rose.

It is said, however, the appellee has no right to assail these conveyances, because his bill does not aver that Fladung was indebted to him when the first of them was executed. It is true the bill charges that Fladung became and was indebted to Rose, the complainant, on the *note* sued on in the City Court, which appears to bear date the 2nd of April, 1874, about two months *after* the date of the first deed, and if this were the only averment of indebtedness contained in the bill, there would be force in this objection to it. But it further distinctly charges "that the *said conveyances* were fraudulently made, not *bona fide,* for simulated and pretended considerations, with intent to hinder, delay, and defraud *your orator* and the *other creditors* of the said Bernhard Fladung of their just and lawful claims," and this averment is, in our opinion, sufficient to let in proof that Fladung was, in fact, indebted to the complainant on and before the 5th of February, 1874. We also regard the fact of such indebtedness to be sufficiently established by the proof. The note for $1000 referred to as dated the 2nd of April, 1874, upon which Fladung was responsible, purports upon its face to be *in renewal* of an antecedent note, and it is proved by what we consider competent and admissible testimony, that Fladung was also liable upon this antecedent note, and that Rose became the purchaser and owner of that note before the 5th of February, 1874. In fact upon this branch of the case very little was said at bar, in the ingenious and able argument of the appellants' counsel. His main effort was to convince the Court that even if these deeds be void, the title to the property would then be determined by the antecedent deeds of October, 1871, and that these latter conveyances created in the grantees, husband and wife, not a *joint tenancy,* but a tenancy by *entirety,* under which the husband's interest could not be subjected to execution by his creditors, at least during the life of the wife. The question thus presented is certainly an interesting, and, in this State, a novel one.

·By the deeds referred to, executed on the 26th· of October, 1871, Fladung and wife, "for the purpose · of creating a joint tenancy in said Bernhard and Barbara Fladung, in all their property," conveyed the same to one Linberger, who immediately re-conveyed it to the said Bernhard Fladung and Barbara Fladung "as *joint tenants,* and not as tenants in common, the survivor of them and the heirs, personal representatives, and assigns of such survivor." Now it must be conceded, that these conveyances do in fact, if such a thing be legally possible, make, and were intended to make, the husband and wife *joint tenants* of this property. Their purpose was to create that estate and no other. But it is contended that wherever property is conveyed ·to husband and wife, the law intervenes and declares that they are both seized of the entirety, and can take no other interest ·or estate, no matter what may be the terms of the instrument or the intention of the parties; and upon this question there is, undoubtedly a conflict of opinion and authority. .

In Maryland there are but two cases in which deeds conveying property to husband and wife have come before this Court for construction. The first is *Craft vs. Wilcox,* 4 *Gill,* 504, where the conveyance was to husband and wife "and their heirs and assigns forever, and the survivor of them," and it was held the husband took the whole by survivorship. In that case it was contended that, as the· deed was executed since the ·Act of 1822, ch. 162, which prohibited the creation of an estate in joint tenancy unless the instrument expressly provides that the property conveyed "is to be held in joint tenancy," the grantees took as tenants in common, but the Court said the deed was not affected by this Act, because it "does not create a joint tenancy:" The opinion delivered by the Court in that case ; is exceedingly brief, and it must be confessed is not very satisfactory. The other case is that of *Marburg vs. Cole,* 49 *Md.,* 402, where the deed simply

conveyed the property to husband and wife, "their heirs and assigns in fee." The wife survived, and the question in the case was whether she had and could convey a clear title to the property. The Court recognized the common law doctrine stated by Blackstone that husband and wife; being considered as one person in law, cannot, under a conveyance. to them jointly, take the estate by moieties; but both are seized of the entirety *per tout et non per my,* as still in force in this State, and held, 1st. that the estate conveyed to husband and wife by a deed *like the one* in that case, is not to them as joint tenants at common law, and hence the Act of 1822, ch. 162, does not apply; and 2nd. that the provisions of secs. 1 and 2 of Art. 45 of the Code, authorizing married women to acquire and hold property as therein provided, do not "at all affect the *nature* of the estate conveyed to husband and wife by *deed to them jointly.*" This is the extent of the decision in that case. Nothing further was in fact decided or intended to be decided, and the reference to the Pennsylvania decisions was made simply for the purpose of adopting the reasoning of those cases as satisfactory and conclusive upon the question that statutes similar to our own, in reference to the power of married women over their property. do not in any manner affect the nature of the estate, which according to the common law, husband and wife take by a grant *to them jointly.*

In neither of these cases did the deed profess to create an estate in common or a joint tenancy, and in the latter this fact is noticed, and the Court refrained from expressing any opinion as to what would be the effect of a conveyance like the one now before us, which *in terms* declares the grantees shall take as *joint tenants,* and not as tenants in common, and which was executed with the avowed intent and for the express purpose of creating a common law joint tenancy. It has not, therefore, been decided in this State that under such a conveyance husband and wife

*cannot* take and hold as joint tenants, nor do we find such a decided preponderance and weight of authority elsewhere, as to conclude the question.

It is true there may be found in many case expressions and *dicta* to the effect that in no contingency, no matter what may be the terms of the grant, can husband and wife under a conveyance to them after marriage, take or hold as joint tenants or as tenants in common; but the cases in which the point has directly arisen, and where it has been expressly so adjudged, are very few.  In *Pollock vs. Kelly,* 6 *Irish Com. Law Rep.*, 367, the deed conveyed the property to husband and wife "as joint tenants," and it was held that the effect of it was to grant an estate by entireties; "for to speak of a grant to a husband and wife as an estate of joint tenancy is, properly speaking, a solecism." On the other hand, Mr. Preston nearly a century ago, in his valuable *Treatise on Estates,* after stating the common law doctrine of tenancy by entireties to be when husband and wife take an estate to themselves jointly by grant or devise made to them during coverture, and showing that it is founded upon the legal notion of the unity of two persons who are husband and wife, says, "In point of fact, and agreeable to natural reason, free from artificial deductions, the husband and wife are distinct and individual persons; and accordingly when lands are granted to them *as tenants in common,* thereby treating them without respect to their social union, they will hold by moieties as other distinct and individual persons would do." *Preston on Estates,* 131, 132.  We have been referred to no English case, and we have found none in which this opinion of Mr. Preston has been reviewed.  In this country it has been quoted, and with apparent approval by all the text-writers.   4 *Kent's Com.*, 363; *Bishop on the Law of Married Women, sec.* 616; *Freeman on Co-Tenancy and Partition, sec.* 72; 1 *Washburn on Real Property,* 674.  The actual decisions upon the point have, however, been conflict-

ing.  In New York the question first arose in *Dias &
Brun vs. Glover*, 1 *Hoff. Ch. Rep.*, 71, where the deed in
express terms created a tenancy in common, and Mr.
Preston's view of the law was rejected. by the assistant
Vice-Chancellor, who held that the grantees took the estate
by entireties.  But subsequently, in the case of *Hicks,
Ex'r, &c. vs. Cochran, et al.*, 4 *Edw. Ch. Rep.*, 107, in the
same Court, where land was conveyed to husband and
wife "the one equal half part to each," the decision was
based upon this citation from *Preston on Estates*, and the
Vice-Chancellor after stating the substance of the rule as
laid down by Mr. Preston, declared he had no hesitation
about adopting and following it.   In Pennsylvania the deci-
sions have followed that of *Dias & Brun vs. Glover*, as will
appear by reference to the case of *Stuckey vs. Keefe's
Ex'r*, 26 *Penn. State Rep.*, 397, where the conveyance being
to husband and wife " their heirs and assigns as tenants in
common, and not as joint tenants," it was held they took
by entireties and not as tenants in common.  But more re-
cently in New Jersey, Mr. Preston's rule has been approved
and followed in *McDermott vs. French*, 15 *N. J. Eq. Rep.*,
78.   In that case a bill for partition alleged that husband
and wife were seized in fee of the premises *as tenants in
common* under a certain conveyance made to them, and a
demurrer was interposed upon the ground that the estate
conveyed must necessarily have been an entirety, and was
not therefore the subject of partition.  But the demurrer
was overruled upon the authority of Mr. Preston, refer-
ence being made to his *Treatise on Estates*, and to 4
*Kent's Com.*, 363, and the Chancellor said: "So it seems
that a husband and wife may *by express words* be made
tenants in common by gift to them during coverture."

We find then nothing in point of authority absolutely
*decisive* against the view of the law thus taken by Mr.
Preston.   But assuming it to have been erroneous at the
time it was originally announced, has not the common law

Fladung and Wife, *et al. vs.* Rose.

been so far modified in recent times as to allow the adoption of such a rule? Modern legislation in this country has to a very great extent removed the common law disabilities of married women, and in this respect the statute law of Maryland is quite as liberal, and has gone quite as far as that of most of her sister States. By our Code, all the property belonging to a married woman at the time of her marriage, and all she may thereafter acquire and receive, is not only protected from the debts of her husband, but she is empowered to hold it for her separate use, to devise it as if she were a *féme sole*, and to convey it by a joint deed with her husband; the necessity of a trustee to secure to her the sole and separate use of her property is dispensed with, and she can sue by next friend in a Court of law or equity in all cases for the recovery and protection of her property as fully as if she were unmarried. In view of these provisions, it seems unreasonable to say that the legal unity and oneness of man and wife, upon which the peculiar tenancy by entireties was founded, still continues just as it existed at common law. Nor is it inconsistent with what was decided in *Marburg vs. Cole*, to hold that the common law in this particular has been, to some extent at least, modified by our statutes. We have said in that case that these provisions of the Code do not affect the nature of the estate, which, according to the common law, husband and wife take by a grant to them jointly, but this must be confined as it was intended to be, to cases where the terms of the grant are similar to those in the deed then under consideration, viz., to husband and wife jointly, or to them and their heirs and assigns in fee. In such cases we have said the common law rule prevails and a tenancy by entireties is the result, but this was not placed on the ground of any *existing incapacity* of husband and wife to take in any other mode. Where the terms of the instrument are such or similar to those used in that deed, the presumption is the parties intend to

Fladung and Wife, *et al.* *vs.* Rose.

create this peculiar species of tenancy, and the common law remains in force so far as to require the estate to be limited accordingly. But where the intention is manifest, and apt words are employed to create a tenancy in common or a joint tenancy, we are of opinion that in this State husband and wife are now capable of taking and holding as *tenants in common* or as *joint tenants,* according to the express terms of the grant, and if at common law they were incapable of so taking and holding, the effect of our statute law is to remove that incapacity. And the conclusion we have thus reached is in entire accord with our decision in *Clark vs. Tennison,* 33 *Md.,* 85, where the effect of one of these statutes upon a common law doctrine was considered. In that case, a woman at the time of her marriage was possessed of a renewable term for ninety-nine years, and after marriage the husband purchased the reversion in the property. It was conceded that, according to the weight of authority at common law, the term was by this purchase merged and extinguished, but it was held that the application of this doctrine would be against the spirit and intention of the Act of 1853, ch. 245, and tend to defeat its purpose and design. That Act, though protecting the wife's property from the husband's debts, still left it subject to his marital rights, and yet the Court held its effect was to so far restrain and limit his ownership and dominion as to prevent, in such a case, the application of the common law doctrine of merger.

We therefore adjudge that Fladung and wife became joint tenants of the property conveyed to them by the deeds of October, 1871; and as it is conceded the husband's interest as joint tenant can be seized in execution and sold by his creditors during the life of the wife, the decree appealed from, which provides for such sale unless the complainant's judgment be paid, must be affirmed. The case being thus disposed of the question whether the husband's interest in case of a tenancy by the entirety

can in like manner be subjected to the claims of his credi-tors during the life of the wife does not arise.

> *Decree affirmed, and*
> *cause remanded.*

