ANNAPOLIS BANKING & TRUST COMPANY
*v.* R. STEWART NEILSON.

[Nos. 53, 54, October Term, 1932.]

*Decided January 12th, 1933.*

The causes were argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Parke, JJ.

*John T. Tucker,* with whom were *Ridgely P. Melvin* and *Keech, Carman, Tucker & Anderson* on the brief, for the appellant.

*Charles F. Harley, John C. Tolson,* and *Burdette B. Webster,* submitting on brief, for the appellees.

Offutt, J., delivered the opinion of the Court.

An attachment, issued out of the Superior Court of Baltimore City on a judgment in favor of the Annapolis Banking & Trust Company against R. Stewart Neilson for $5,014.17, was laid severally in the hands of R. Tynes Smith and Esther D. Smith, garnishees. The garnishees occupied at the time property known as No. 3931 Cloverhill Road in Baltimore City, which they rented from R. Stewart Neilson and Edith M. Neilson, his wife, who held the fee simple title to it as tenants by the entireties. Upon the return of the attachment, R. Stewart Neilson filed in each garnishee case a motion to quash the writ, and after a hearing and testimony an order was entered in each case granting the motion. These appeals are from those orders.

The ground of the motions was that the attachment affected only the rent issuing out of the property so held by Neilson and his wife as tenants by the entireties, that it accrued to them as tenants by the entireties, and that it could not be taken in execution to satisfy the several and separate debts of either. The controlling question presented by the appeals is whether that proposition correctly states the law.

It has long been the settled law of this state that property held by husband and wife as tenants by the entireties cannot be taken to satisfy the several and separate debts of either

tenant. *Wolf v. Johnson,* 157 Md. 112, 145 A. 363; *McCubbin v. Stanford,* 85 Md. 390, 37 A. 214; *Marburg v. Cole,* 49 Md. 402. That was the rule at common law. 2 *Blackst. Com.* 182; *Co. Litt.* 187; *Cruise's Digest,* 492; 1 *Preston, Estates,* 131, 132; *Tiffany, Real Property,* sec. 194. And notwithstanding the disappearance of the hypothetical unity of husband and wife as the result of statutory changes, the rule itself in this state remains unchanged and unimpaired. The nature of that unity was in *Brewer v. Bowersox,* 92 Md. 567, 572, 48 A. 1060, 1062, thus defined: "It is not because a conveyance or gift is made to husband and wife as joint tenants that the estate by entireties arises, but it is because a conveyance or gift is made to two persons who are husband and wife; and since, in the contemplation of the common law, they are but one person, they take, and can only take, not by moieties, but the entirety. The marital relation, with its common law unity of two persons in one, gives rise to this peculiar estate when a conveyance or gift is made to them without restrictive or qualifying words; and they hold as tenants by the entirety, not because they are declared to so hold, but because they are husband and wife. This estate, with its incidents, continues in Maryland as it existed at the common law. *McCubbin v. Stanford,* 85 Md. 390, 37 A. 214." But it had been held in *Fladung v. Rose,* 58 Md. 13, that that unity did not prevent a husband and wife from holding property as joint tenants or even as tenants in common; and in *Brell v. Brell,* 143 Md. 450, 122 A. 635, and *Whitelock v. Whitelock,* 156 Md. 115, 143 A. 712, it was held that the usufruct of, property so held could be apportioned between the tenants as though they were joint tenants or tenants in common.

Between the decision in *Fladung v. Rose, supra,* and *Wolf v. Johnson, supra,* legislation had in a great measure freed the wife's property from the control which the common law gave the husband over it, and after chapter 457 of the Acts of 1898 (Code 1924 and Supp. 1929, art. 45, sec. 1 *et seq.*) the wife had the same right to hold, manage, enjoy, use and dispose of her property that the husband had in respect to

his. At the time *Fladung v. Rose, supra,* was decided, the Act of 1842, ch. 245, protecting the wife's property from the debts of the husband, and chapter 293 of the Acts of 1853, allowing her to make a will giving her property to her husband, or to other persons with his consent, provided the will was made sixty days before her death, and allowing her to hold as a *feme sole* property of the value of $1,000, which she had earned by her skill, industry, or personal labor, were in force, as was Code 1860, secs. 1 and 2. Prior to those acts, at common law the husband's marital rights gave him complete control over all the wife's property during her life. Those successive steps in the legislative process of freeing the wife's property from the control which the common law marital rights of the husband gave him over it, while they progressively enlarged her dominion over her own property during the husband's life, did not affect the quantity of her estate therein. For while at common law, during coverture, he took a freehold estate in her property (*Venable's Syllabus on Real Property,* 35), and her power over it was suspended, at his death she resumed possession of it free from any incumbrance or contract made by him. *Ibid.* The effect of such legislation was, however, to modify the common law doctrine of the "legal unity and oneness" of man and wife, and so it was held in *Fladung v. Rose, supra,* that while a deed to husband and wife jointly or to them and their heirs in fee will create a tenancy by the entireties, nevertheless, if the deed is to them as "joint tenants," though qualified by the words, "the survivor of them and the heirs, personal representatives, and assigns of such survivor," it will create a joint tenancy and not a tenancy by the entireties. But while the court in that case reached its conclusion by assuming that the common law principle of the unity of husband and wife had been at least modified by the Married Women's Acts, codified as sections 1 and 2, Code 1860, in *Clark v. Wootton,* 63 Md. 113, it was held that a judgment obtained by a husband and wife against a railway company was, because of that unity, held by them as tenants by the entireties, and in *Brewer v. Bowersox,* 92 Md. 567, 48 A. 1060, 1062, decided

in 1901, it was held that a fund received by a bank "of Jacob or Emily Bowersox", who were husband and wife, was held by them as tenants by the entireties, and it was there announced that: "This estate, with its incidents, continues in Maryland as it existed at the common law." And *McCubbin v. Stanford, supra,* is cited in support of that statement.

So that, while the reasons for the rule have disappeared, the rule itself survives in its original force and vigor to this extent, that where property is transferred to a husband and wife jointly and to the survivor, without words indicating that they are to hold it in any other manner, they will be presumed to hold it as tenants by the entireties as at common law. And the unity which at common law actually resulted from the merger of the wife's identity in that of the husband, in respect to the control of her property, survives as a fiction for the purpose of continuing what has been the unbroken policy of this state. In applying the rule to conditions which have resulted from the operation of the emancipatory statutes and in keeping the rule intact, on the one hand, and in giving effect to those statutes on the other, the court has necessarily been forced to distinguish between the effect of those statutes on the extent of the wife's estate in her property, and its effect on the control of such property during coverture. And while through the fiction of unity it has preserved intact the estate of tenancy by the entireties, it has at the same time recognized that, as a result of those statutes, the tenants have *inter sese* rights in the common property which can only be enforced upon the assumption that the husband and the wife are not one but two persons. So in *Masterman v. Masterman,* 129 Md. 179, 98 A. 537, it was held that a fund realized from insurance on property held by the entireties which was destroyed by fire might be invested by order of the court and one-half of the income from the fund paid to each tenant, the corpus to go to the survivor, and the same result was reached in *Brell v. Brell,* 143 Md. 450, 122 A. 635, in respect to the income from a fund realized from the sale of real estate, and in *Whitelock v. Whitelock,* 156 Md. 122, 143 A. 712, as to the income from a

fund paid to trustees in satisfaction of a mortgage debt, and in *Tizer v. Tizer,* 162 Md. 489, 160 A. 163, it was stated that there could be no valid renting of property held by the entireties unless the wives joined with the husbands. But in none of those cases was it held that the quality of severability of the interest of the husband and wife in the use of the common property affected or abrogated the common law estate of tenancy by the entireties, but in all of them, by express language or clear implication, the existence of such an estate is recognized, and the effect of the Married Women's Acts limited to the use of the common property and held not to affect the extent or nature of the estate itself.

The question finally, therefore, is whether the usufruct, issues, rents, or profits of the estate can be regarded as separate and distinct from the estate itself. Here again there is an apparent conflict between the decisions on that question at common law, and the decisions since the adoption of the Married Women's Acts. At common law the husband was entitled to the complete control of his wife's property during their joint lives (*Schindel v. Schindel,* 12 Md. 108; *Id.,* 12 Md. 294; *Tiffany on Real Property,* sec. 205), and his estate was liable to execution for his debts. *Ibid.* But when the husband was as a result of those statutes deprived of those marital rights, his interest in the property was no longer measured by the conveyance and the common law, but by the conveyance, the common law, and the statutes, and the question was, not whether the freehold which he held at common law in the wife's property could be separated from the estate by the entireties, for that was gone, but whether the use of the estate was a part of it. On that question, as well as on the effect of the Married Women's Acts on the estate itself, the decisions are in conflict. But where, as in this state, the estate is recognized, and it is settled that the husband's interest in it cannot be sold to satisfy his debts (*Jordan v. Reynolds,* 105 Md. 288, 66 A. 37), the sounder view is that the usufruct cannot be separated from the estate itself; for it would be an empty privilege to give the wife the right to enjoy the whole property jointly with her hus-

14

band, if she could be deprived of the use of one-half of it at any time by his creditors or alienees. To hold that would be to destroy the estate by converting it into a joint tenancy or tenancy in common except as to the indestructibility of the incident of survivorship, which is peculiar to the estate of tenancy by the entireties. *Brewer v. Bowersox, supra.* If the wife has a present complete right to the possession, use, occupation, and enjoyment of the whole estate jointly with her husband, that right would be invaded and annulled by compelling her to take in lieu thereof an exclusive right in a part of it. It is no answer to that objection to say that an equal division of the usufruct may not injure either tenant; for if the wife has the right to use and enjoy the whole, and that right is protected by statutes which allow her complete freedom in the use, possession and ownership of her property, the wife, and the wife alone, should have the power to say whether she will exchange the right of enjoying and using the whole property jointly with her husband for a part of the property exclusively. There may be cases in which the parties agree between themselves upon a division of the usufruct, or where as a result of marital differences they are unable to agree upon the disposition of the usufruct, and where as a result of such disagreement neither is able to enjoy it, in which case a division may be ordered. But such cases do not reflect upon the immediate question, for in the one, the division rests upon the consent of the parties, and in the other on the general power of a court of chancery over the joint property of husband and wife, where they are unable to agree as to its disposition or enjoyment, as in *Masterman v. Masterman, supra,* and *Whitelock v. Whitelock, supra.* Such cases go no farther than to determine that under the conditions peculiar to them the courts may decide the rights of the tenants *inter sese,* but where no such conditions exist, the usufruct cannot be considered as a thing apart and separate from the estate out of which it issues.

Neither that nor indeed any one view is universally accepted by the courts of this country, and the extent of the conflict is indicated in the very useful brief in *McCubbin v.*

*Stanford,* 85 Md. 378, 37 A. 214, *supra,* but it appears at least to be consistent with reason and is a natural consequence of the peculiar nature of the estate. The reason for the conclusion is stated by Judge Thayer with convincing force in *McCurdy v. Canning,* 64 Pa. 41, in an opinion approved and adopted in *Re Meyer,* 232 Pa. 89, 81 A. 145, in which he says:

"The case, therefore, stands thus: Here is a married woman who is neither a joint tenant or tenant in common with the husband, but who is seized of the whole estate, and with him entitled to possession of the whole. If a purchaser of the husband's interest may be put into possession with her, what follows? This: 1st. You have destroyed her estate, and turned her entirety into a joint tenancy or tenancy in common. 2nd. You have deprived her altogether of the possession, because it is not in the nature of things that she can enjoy actual possession with a stranger as she did with her husband. 3rd. You have taken away her property without her consent and destroyed her rights, which were protected by the Act of April 11th, 1848. She was entitled to possession of the whole with her husband. You propose to give possession of the whole with a stranger, a possession which she cannot, and which he probably would not enjoy. If it should be answered that the property may be rented, and a moiety of the rents and profits may be paid to her, that is only to say that you may deprive her of her estate and give her another of inferior value, a substitution which you have no right to propose. The words of the Act of 1848 are of so comprehensive a character, and its purpose to protect every possible interest of the wife is so plain, that we cannot, by any possible construction, consistent with the object of the legislature, and the language which they have used, except this interest from its protection.

"These considerations lead us to the conclusion that one who, without the consent of the wife, purchases the husband's interest in real estate in which both husband and wife are seized of the entirety, and to the possession of the whole of which she is entitled equally with him, does not acquire,

during the wife's life, any right to the possession, either jointly with her or to her entire exclusion. Practically these two propositions are not alternatives but the same, for we can as easily marry her to a stranger as marry her possession to his without destroying her estate."

See, also, *Ann. Cas.* 1912C, 1242; *Tiffany on Real Prop.,* sec. 194, notes 38 and 39; 30 *C. J.* 568.

It is suggested that, as a result of that conclusion, the "rights" of the husband's creditors will be defeated, but there is little force in that even as an *ad captandum* argument, for the creditors have no "rights" but such as the law gives them, and the law gives them no right to take the wife's property for the husband's debts, and no reason appears why they could not have discovered, before they extended credit, what they learned afterwards, that the property which they now seek to reach was not held by Neilson but by Neilson and his wife as tenants by the entireties.

In view of that conclusion it becomes unnecessary to consider at length the other questions presented by the appeal. One relates to the admission of evidence tending to show that Neilson and wife had applied the rent of the property to the payment of interest charges and taxes. The relevancy of that evidence is not apparent, but as it could not have possibly affected the result, there was no reversible error in the ruling admitting it. Another question is, Where a lease is to joint tenants, will an attachment on a judgment against the lessor laid severally in the hands of each tenant lie? And a third is whether, "Even though a husband is entitled to one-half of the rent money from property owned by him and his wife as tenants by the entireties, can such portion be attached in the hands of the tenants of the property?" The question last stated is merely a variant of the main question and, in view of the disposition of it, need not be considered separately, and as a result of that disposition the second question becomes moot.

It follows from what has been said that the orders appealed from will be affirmed.

*Orders affirmed, with costs.*