467 A.2d 510

**Willard R. DIAMOND, II, et al.**

v.

**Lois F. DIAMOND.**

**No. 144, Sept. Term, 1982.**

Court of Appeals of Maryland.

Dec. 1, 1983.

Ronald B. Katz, Baltimore (Melvyn J. Weinstock and Weinberger & Weinstock, P.A., Baltimore, on the brief), for appellants.

Dean P. Gunby, Baltimore (Leslie L. Gladstone, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COLE, Judge.

The primary issue presented in this case is whether a check payable to a man, his wife and their attorney tendered by an insurance company in settlement of the husband's claim for personal injuries and the husband's and wife's claim for loss of consortium may be attached to satisfy the husband's individual debt.

On January 30, 1978, a judgment was entered in the Circuit Court for Baltimore County in favor of Lois Diamond Daniels against her former husband, Willard R. Diamond, II, in the amount of $28,589.80. During the same year Willard and his new wife, Sondra, brought a law suit against Atkinson Freight Lines, Inc., and Albert Durant, claiming damages in the amount of $2,000,000 for personal injuries to Willard and $85,000 for loss of consortium on behalf of Willard and Sondra. In both suits Willard was represented by Leonard Orman, Esquire.

Interrogatories answered by Willard indicated that he had lost approximately $60,000 in wages and suffered permanent back injuries which disabled him by 25%. In addition he had spent approximately $1,240.00 in medical expenses. Fireman's Fund Insurance Company (hereinafter Fireman's Fund), the defendants' insurer, settled the entire claim with the Diamonds for $30,600.00 without apportioning the proceeds among the individual claims.

On November 21, 1980, Fireman's Fund issued a check payable to Willard and Sondra Diamond and their attorney in the amount of $30,600.00. The check was forwarded to the attorney. On that same day Lois filed an attachment on all funds in Orman's possession which were payable to Willard. Orman responded to the attachment and prayed judgment for costs, asserting that he had notified the garnishor that he did not possess any assets of Willard to which Willard was entitled individually but possessed only assets owned as tenants by the entireties by Willard and Sondra Diamond. Subsequent to the service of the attachment Orman deposited the check in his business account.

Lois also served a writ of attachment upon Fireman's Fund. The insurer stopped payment on the check and the $30,600.00 which it represented was deposited with the clerk of the Circuit Court for Baltimore County following consolidation of the Writs of Attachment.

After an evidentiary hearing, the Circuit Court for Baltimore County issued a Memorandum Opinion and Order on December 14, 1981, stating that the settlement funds were not owned by Willard and Sondra Diamond as tenants by the entireties. Therefore, the funds were severable and Willard's share could be attached. The court apportioned the funds according to the *ad damnum* clauses contained in the original suit and determined that the value of Willard's individual claim for damages was $29,300 and that the value of the joint claims for lost consortium was $1,300. The court further ruled that the claim for attorney's fees was preempted by the attachment. On December 15, 1981, the court ordered that the unpaid balance of Lois' judgment be paid from the funds which Fireman's Fund had paid to the clerk of the circuit court.

The Court of Special Appeals affirmed the judgment of the circuit court in an unreported *per curiam* opinion, *Diamond v. Diamond,* No. 107 filed September 23, 1982. Willard, Sondra and Leonard Orman petitioned this Court for a writ of certiorari, raising three basic issues:

[I] Did the Court of Special Appeals err in upholding the Circuit Court's decision that Willard and Sondra Diamond did not own the settlement funds as tenants by the entireties?

[II] Did the Court of Special Appeals err in upholding the Circuit Court's apportionment of the settlement funds?

[III] Did the Court of Special Appeals err in upholding the Circuit Court's finding that Appellant, Leonard Orman's attorney's lien against the settlement funds was preempted by the judgment of Appellee?

We shall address these questions separately.

I

Willard and Sondra first assert that the Court of Special Appeals erred in ruling that there was no evidence of an intent to create a tenancy by the entireties in the settlement funds. They contend that the settlement proceeds clearly were intended to be held as tenants by the entireties because the money was for their total claims. They point to the testimony of Sidney Leech, attorney for Fireman's Fund, which indicates that the claims were not discussed separately and that there was never an apportionment of the settlement funds. The settlement consisted of only one check which was made payable to a husband and wife. Thus, they argue that property transferred to a husband and wife jointly is presumed to be held as tenants by the entireties.

This Court recently examined the law of tenancy by the entireties in this State in *Beall v. Beall,* 291 Md. 224, 234, 434 A.2d 1015 (1981). We stated:

Maryland retains the estate of tenancy by the entirety in its traditional form. By common law, a conveyance to husband and wife does not make them joint tenants, nor are they tenants in common; they are in the contemplation of the law but one person, and hence they take, not by moieties, but by the entirety. Neither can alienate without the consent of the other, and the survivor takes the whole. Tenancy by the entirety may not be severed

by the consent of one of the parties or by their individual judgment creditors during their joint lives; except in the case of absolute divorce, during the lifetime of both tenants their estate may be terminated only by the joint action of both and a conveyance by both to a third person. [Citations omitted.]

■ It is well established that this Court recognizes that a tenancy by the entireties may be created in personal property. *See M. Lit, Inc. v. Berger,* 225 Md. 241, 170 A.2d 303 (1961); *Schildt v. Schildt,* 201 Md. 10, 92 A.2d 367 (1952); *Beard v. Beard,* 185 Md. 178, 44 A.2d 469 (1945); *Brewer v. Bowersox,* 92 Md. 567, 48 A. 1060 (1901). A number of our sister states are in agreement with this view. *See, e.g., Ramsey v. Ramsey,* 259 Ark. 16, 531 S.W.2d 28 (1975); *Widder v. Leeds,* 317 A.2d 32 (Del.Ch.1974); *Tingle v. Hornsby,* 111 So.2d 274 (Fla.App.1959); *Matter of Estate of Au,* 59 Haw. 474, 583 P.2d 966 (1978); *Saylor v. Saylor,* 389 S.W.2d 904 (Ky.1965); *Campagna v. Campagna,* 337 Mass. 599, 150 N.E.2d 699 (1958); *Murphy v. Michigan Trust Co.,* 221 Mich. 243, 190 N.W. 698 (1922); *Runco v. Ostroski,* 361 Pa. 593, 65 A.2d 399 (1949); *First American National Bank v. Evans,* 220 Tenn. 393, 417 S.W.2d 778 (1967); *Swanton Sav. Bank & Trust Co. v. Tremblay,* 113 Vt. 530, 37 A.2d 381 (1944); *Oliver v. Givens,* 204 Va. 123, 129 S.E.2d 661 (1963); *Wambeke v. Hopkin,* 372 P.2d 470 (Wyo.1962).

■ It also is well settled in this State that property held in a tenancy by the entireties cannot be taken to satisfy individual debts of a husband and wife. *Lake v. Callis,* 202 Md. 581, 97 A.2d 316 (1953); *Hertz v. Mills,* 166 Md. 492, 171 A. 709 (1934); *McCubbin v. Stanford,* 85 Md. 378, 37 A. 214 (1897). As we stated in *Hertz, supra,* 166 Md. at 496, 171 A. 709:

The essential nature of an estate by the entireties precludes the recognition of any burden upon it resulting from the separate act or obligation of either of the co-owners. To regard a judgment against one of them as a lien upon his or her interest in such an estate would be in

derogation of the entirety of title with which each is invested.

■ Thus, if the settlement check was held by the couple as tenants by the entireties then Lois could not attach the check. However, Willard and Sondra did not own the check as tenants by the entireties.

Both the trial court and the Court of Special Appeals relied on our decision in *Jones v. Jones,* 259 Md. 336, 270 A.2d 126 (1970), as controlling. We agree.

In *Jones,* a husband and wife retained an attorney to represent them relative to injuries sustained by the wife in an automobile accident. The wife's claim was for personal injuries while the husband's claim was for reimbursement of certain medical expenses paid by him. The couple separated prior to settlement of their claims. The problem in this case was that a single settlement was reached in satisfaction of both claims and the husband and wife could not agree as to the allocation between them of the sum collected. As in the case at hand, the settlement check was payable to the husband, wife, and attorney.

The wife instituted a declaratory judgment action to determine ownership of the funds. The husband asserted that the court lacked jurisdiction on the ground that the sum obtained in settlement was owned as tenants by the entireties and therefore could not be divided. The Court recognized that "a tenancy by the entirety might be created in personal property." *Id.* at 338, 270 A.2d 126. However, the Court found prior Maryland cases, including *Banking & Trust Co. v. Neilson,* 164 Md. 8, 164 A. 157 (1933) (suggesting that a conveyance to husband and wife gives rise to a presumption of a tenancy by the entireties), to be distinguishable. The Court noted that in the real estate and personal property settings examined by Maryland cases, there was a discernible intent to transfer property to a husband and wife as tenants by the entireties:

When a husband and wife purchase real estate and it is conveyed to the two of them as tenants by the entireties

there is a positive direction for the creation of the estate. If one spouse has contributed the entire purchase price, then *by directing that it be titled as tenants by the entireties he has manifested a positive intent to create the estate.* Likewise, the creation of a bank account as in *Bowersox* and *Baker* calls for *positive action, thereby evidencing an intent to create a tenancy by the entireties.* When the boat was titled in *Haid* the husband directed the official to register the boat as being owned by him and his wife and his son, an intent relative to title being thereby shown. Similarly, when a testator devises real estate to husband and wife he presumably knows the law and the land is transferred to those parties accordingly. *In each of these examples an intent to transfer can be determined.* [*Id.* 259 Md. at 340, 270 A.2d 126 (emphasis supplied).]

Contrasting these cases with the facts in *Jones* this court noted:

Here we have a situation in which husband and wife retained an attorney to represent them relative to claims arising out of the accident. The wife had a claim for her personal injuries. The husband had a claim for the sums expended by him on behalf of his wife as a result of the personal injuries. Had a suit been filed and judgment obtained a judgment would have been entered in favor of the wife and the wife alone for her personal injuries. Likewise, a judgment would have been entered in favor of the husband and the husband alone for the amounts he expended on behalf of his wife for medical expenses. *We perceive no evidence of an intent to create a tenancy by the entireties. The act of obtaining an attorney to represent both of them falls far short of being evidence of such an intent. The act of hiring an attorney did not constitute a transfer of the interests the parties had previously held.* [*Id.* at 340–41, 270 A.2d 126 (emphasis supplied).]

Therefore, in order to create a tenancy by the entireties there must be evidence of an intent to transfer property previously held by an individual to the marital unit. While such an intent may be presumed in other situations

(*e.g.,* purchasing real estate or creating a bank account), *Jones* logically held that nothing in a factual situation similar to that with which we currently are faced indicates an intent to create a tenancy by the entireties in a settlement check for individual claims of the husband and wife. Therefore, in order for a tenancy by the entireties to arise in such a situation there must be sufficient evidence of one of the couple's transference of his individual interest to the couple as a whole. In *Jones* there simply was no such evidence and the Court concluded: "The drawing of a draft to husband, wife and their attorney, in effect 'as their interest may appear', was not a transfer of the wife's prior individual claim so as to vest title to that claim in her and her husband as tenants by the entireties." *Id.* at 342, 270 A.2d 126. Similarly, in this case, the trial court could "perceive no evidence of an intent to create a tenancy by the entireties." We agree.

In fact, we see no more evidence of such an intent in this case than there was in *Jones.* Any slight distinctions between *Jones* and the case *sub judice,* are irrelevant. In both cases there is a settlement check made payable to husband, wife, and attorney. In both cases there was no apportionment of the claims; yet there also was no indication of an intent to create a tenancy by the entireties in the check. We believe that *Jones* is dispositive and that the trial court was correct in concluding that the Diamonds did not hold the check as tenants by the entireties. Thus, Willard's share of the funds was attachable.

## II

Willard and Sondra also argue that the Court of Special Appeals erred in upholding the decision of the circuit court apportioning the settlement funds according to the *ad damnum* clauses contained in the Diamonds' declaration. They contend that the court ignored the clear intention of the parties which was that the settlement funds were to be owned jointly. Further, the amounts prayed for in the *ad*

*damnum* clauses bear no relationship to the final settlement agreement.

■ We agree with the Court of Special Appeals that the apportionment of the circuit court was not clearly erroneous. The trial court found that the *ad damnum* clause

conveys the value placed on each claim by the Diamonds themselves and their attorneys. The ad damnum is two million dollars ($2,000,000.00) for Mr. Diamond's individual claim and only $85,000.00 for the joint claim for the loss of consortium. Scaled down to the total amount of the final settlement (Thirty Thousand Six Hundred Dollars ($30,-600.00), the relative values for the claims, as established by Mr. Diamond and his wife, are approximately: Twenty-Nine Thousand Three Hundred Dollars ($29,300.00) for Mr. Diamond's individual claim for damages; One Thousand Three Hundred Dollars ($1,300.00) for the joint claim of husband and wife for lost consortium.

In fact, this apportionment was rather generous considering that the claims representative for Fireman's Fund, Michael Barnaba, answered in his deposition that he did not consider any factors other than Willard's disability and loss of wages in authorizing the settlement amount:

Q [Mr. Gladstone, Lois' attorney]—* * * What, if any, considerations were given by you, sir, in making your offer of settlement to the claim of loss of consortium of Mr. and Mrs. Diamond?

A I would have to say none.

Q Did you have any discussions, sir, with Mr. Leech insofar as the value of the loss of consortium claim or offering anything for the loss of consortium claim.

A None whatsoever.

 * * * * * *

Q Did you ever have any discussion between yourself and Mr. Orman concerning the value of the loss of consortium?

A No.

**34**

Q No, you have no recollection or you never discussed that with him?

A No, I never discussed it with him.

Q Did he ever discuss it with you or make a demand for a settlement on the loss of consortium count?

A No.

Although the attorney for Fireman's Fund, testified that he took loss of consortium into account, it was merely one of a number of factors. Based on the depositions and testimony presented in the record, we find that the apportionment of the circuit court was not clearly erroneous and thus will not be set aside. Maryland Rule 886.[1]

## III

Orman lastly argues that the Court of Special Appeals erred in finding that he never possessed or collected funds due his client and thus that he had no lien. Noting that he did possess, and was a payee on, the original draft, the attorney urges that any portion of the draft belonging to him before the Writ of Sequestration was issued should be paid to him.

We shall briefly examine the pertinent law of attorney's liens. There are two types of attorney's liens: retaining and charging. We discussed them in *Ashman v. Schecter,* 196 Md. 168, 173–74, 76 A.2d 139 (1950):

[An attorney has a retaining lien] on all papers, securities and money belonging to his client which come into his possession in the course of his professional employment. This is a general lien which gives him the right to retain such things until all his charges against his client are paid.

---

1. Rule 886 provides:

When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses.

As the name implies, it is dependent upon possession. It is, generally speaking, a passive lien and cannot be actively enforced either at law or in equity. The other lien is a charging lien which binds a judgment recovered through the attorney's efforts. This lien, . . . was based upon the broad principle of justice that an attorney, as a recognized officer of the court, should be paid his fees and expenses out of any judgment obtained as the result of his labor and skill. It was a means invented by the courts to protect attorneys from being cheated by their clients by preventing the clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained. [Citations omitted.]

■ Maryland does not recognize the charging lien in the absence of statute.[2] *Northwestern N. Ins. v. Wetherall,* 272 Md. 642, 325 A.2d 869 (1974); *Campen v. Talbot Bank of Easton,* 271 Md. 610, 319 A.2d 125 (1974); *Tucker v. Dudley,* 223 Md. 467, 164 A.2d 891 (1960); *Maddox v. District Supply, Inc.,* 222 Md. 31, 158 A.2d 650, *cert. denied,* 364 U.S. 872, 81 S.Ct. 114, 5 L.Ed.2d 93 (1960); *Ashman v. Schecter, supra; Marshall v. Cooper,* 43 Md. 46 (1875). Thus, in order for Orman to have a lien, it must be a retaining lien.

The retaining lien has its roots in the common law. It was recognized as early as 1734 by the English courts. Comment, *Attorneys' Retaining Liens,* 6 J. Legal Prof. 263 (1981). The lien is "founded 'on general principles of justice,' and its effectuation has been termed the exercise of 'the inherent power of courts over the relations between attorneys and their clients.'" *Norrell v. Chasan,* 125 N.J.Eq. 230, 4 A.2d 88, 90 (1939) quoting *Everett, Clarke & Benedict v. Alpha Portland Cement Co.,* 225 F. 931, 935, 936.

---

2. *See, e.g.,* Maryland Code (1957, 1979 Repl.Vol.) Art. 88A, § 7 relating to attorney's fees for representing local governing authority in claims against public assistance recipients or their estates; and Maryland Code (1957, 1979 Repl.Vol.) Art. 101, § 57 relating to attorney's lien in Workmen's Compensation cases, *see Hoffman v. Liberty Mutual,* 232 Md. 51, 191 A.2d 575 (1963).

 Because the retaining lien is based on possession, Orman had a lien solely on items in his possession. When money is in issue, an attorney has a lien only on funds actually collected belonging to his client. *See* 3 *Poe's Pleading and Practice* § 53 (6th ed. 1975). In this case, Orman never had possession of the money which the draft represented, thus he did not have a lien on the settlement proceeds. At most, he had a lien on the draft while it was in his possession. Because Fireman's Fund stopped payment on the draft, its value literally consisted of only the paper on which it was written. The only way a lien could have attached to the settlement proceeds is if Maryland law provided for the charging lien under these circumstances. Unfortunately for Orman, it does not; thus neither remedy is available to him. Accordingly, the Court of Special Appeals was correct in finding that there was no lien.

For the above reasons, the judgment of the Court of Special Appeals is affirmed.

JUDGMENT AFFIRMED, WITH COSTS.